IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00371-RBJ-MEH

CHARLES LAMONT WILLIAMS,

      Plaintiff,

v.

DEBORAH BORREGO,
DAYNA JOHNSON,
JENNIFER HANSEN,
DAVID LISAC,
REBECCA VOLZ,
ANDREW KING, and
JOHN DOE,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Michael E. Hegarty, United States Magistrate Judge**.

     Before the Court are Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (ECF 23) and Rule 12(b)(6) Partial Motion to Dismiss Plaintiff's Complaint (ECF 24). By Order of Reference to United States Magistrate Judge, these motion have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b). ECF 26.

     Defendants first seek summary judgment in their favor on all three of Plaintiff's claims: one claim against Defendants Borrego and Johnson for violation of his Eighth Amendment rights,

and two separate claims against Defendants King, Hansen, Lisac, Volz, and Doe[1] for violation of his First and Fourteenth Amendment rights. Defendants argue the record conclusively establishes Plaintiff failed to exhaust his available administrative remedies, as required by the Prisoner Litigation Reform Act of 1995, and, thus, they are entitled to summary judgment on "the bulk"[2] of Plaintiff's claims. Plaintiff alleges he did exhaust his administrative remedies, arguing the procedural denials of his grievances should be excused and his grievances satisfied the purpose of the grievance process in affording prison officials an opportunity to address the merits of his complaints.

The Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether he properly exhausted his administrative remedies with respect to his first and second claims and two of the allegations supporting his third claim. Therefore, this Court respectfully recommends that Defendant's Motion for Summary Judgment be granted in part and denied in part. In light of this, the Court recommends the portion of Defendant's Partial Motion to Dismiss which pertains to Claims One and Two and the pertinent allegations of Claim Three be denied as moot.

Turning to the Motion to Dismiss relating to the remaining portion of Claim Three, Defendants move for dismissal of the claim against them in their individual capacities in its entirety

---

[1] Plaintiff has failed to identify and serve Defendant John Doe within the time required by Fed. R. Civ. P. 4(m); thus, the Court respectfully recommends that the District Court dismiss Plaintiff's claims against Doe without prejudice.

[2] Defendants concede Plaintiff exhausted his administrative remedies with respect to two allegations he asserts in support of his third claim for relief: (1) CDOC wrongfully suspended Native American offenders' use of tobacco in religious ceremonies for approximately thirty days; and (2) beginning May 4, 2018, CDOC suspended Native American religious activities "until further notice" but permitted Christian and Islamic services during that time. Ex. 1 Defs.' Mot. for Summ. J., DeCesaro Aff. ¶ 27, ECF 23-1.

and dismissal of the claim against them in their official capacities insofar as it seeks money damages. Plaintiff responds that Defendants are not entitled to qualified immunity because his rights under the First Amendment, Fourteenth Amendment, and Equal Protection Clause are clearly established.

The Court finds that Plaintiff's claim against Defendants in their official capacities is barred by the Eleventh Amendment insofar as the claim seeks declaratory relief or money damages. Additionally, taking the facts alleged in the Amended Complaint as true, the Court concludes Plaintiff fails to carry his burden in light of the Defendants' asserted qualified immunity, and the Court recommends the claim against Defendants in their individual capacities be dismissed. Accordingly, this Court respectfully recommends that Defendant's Rule 12(b)(6) Partial Motion to Dismiss Plaintiff's Complaint be granted in part and denied in part as moot, noting that Plaintiff's claim against Defendants King, Hansen, Lisac, and Volz in their official capacities seeking prospective, injunctive relief remains.

I. **Recommendation on Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies**

    A.    <u>Findings of Fact</u>

The Court makes the following findings of fact viewed in the light most favorable to Plaintiff, who is the non-moving party in this matter.

1.     During all relevant times, Plaintiff was incarcerated by the Colorado Department of Corrections ("CDOC") at the Buena Vista Correctional Facility.

2.     The CDOC provides offenders with administrative remedies pursuant to a four-step process. First, there is an initial informal dialog. DeCesaro Aff. ¶ 4. After the initial dialogue, there is a formalized grievance process set forth in Administrative Regulation ("AR") 850-04. *Id.*

at ¶ 5.  This regulation provides that offenders are required to attempt to resolve any issue or complaint by filing a document known as a Step One grievance.  *Id*. at ¶ 6.  If an offender is unsatisfied with the disposition of their Step One grievance, he or she may seek administrative review of that decision by filing a Step Two and, subsequently, a Step Three grievance.  *Id*. at ¶ 7.

3.       On December 8, 2016, Plaintiff filed a Step One grievance complaining that, on October 3, 2016, he submitted two medical "kites" (offender communication forms), only received one response, and, as of the time of filing the grievance, had not been seen for the complaints of either kite.  Grievance Form, ECF 23-2 at 1.  Plaintiff requested to see a doctor, rather than a nurse, and have the surcharge waived.  *Id*.

4.       An individual named Anastasia Verhoeven responded to the Step One grievance saying, in part, "You were indeed scheduled and then it appears you had to be rescheduled.  I apologize for the delay in getting you seen. . . . You will be scheduled to be seen."  *Id*.  The disposition of the grievance was "granted in part."  *Id*.

5.       On December 22, 2016, Plaintiff filed a Step Two grievance complaining that, as of the date of the grievance, Plaintiff had seen a nurse and "been scheduled" in response to one kite, but had not been seen for the second kite which was for "trouble sleeping."  Grievance Form, ECF 23-2 at 2.  It continued, "I have yet to see the provider I requested for either issue," and "[m]y remedy remains the same.  I would like to see a med[ical] doctor not a nurse practitioner."  *Id*.

6.       Defendant Johnson responded to the Step Two grievance saying,

> Your kite for trouble sleeping is for Mental Health.  The remedy you are requesting is not one that is available to you.  Please review the AR 850-04.  You may not request to see a certain provider.  You have had some xrays recently and you currently do not have any open kites in medical. . . . Your grievance is denied.

*Id*.

7.      On January 13, 2017, Plaintiff filed a Step Three grievance saying,

> On 10.3.2016 I submitted two kites to medical, one for back and foot pain the other for trouble sleeping.  I saw a nurse (who just took my vitals and rescheduled me) as of today 1.13.2016 [sic] I have not seen anyone, let alone the doctor I have requested.  My kite for 'trouble sleeping' was forwarded to med[ical] from m[ental] health by my counselor (Mr. Tucker).  Also the xrays mentioned in the response to my Step II were for my throat not either kite submitted on 10.3.2016. I have been denied medical services, period!  There kites have not been addressed, meaning I haven't received any treatment on either issue.

Grievance Form, ECF 23-2 at 3 (collectively, as a series with the Step One and Step Two grievances, "Medical Grievance").  The grievance then reiterated that Plaintiff would like to see a doctor and have the fee waived.  *Id*.

8.      An individual named Marshall Griffith responded to the Step Three grievance by attaching a letter from Grievance Officer Anthony DeCesaro.  *Id*.; *see also* February 13, 2017 Letter, ECF 23-2 at 4.  The letter stated, in part,

> The grievance procedure is outlined in Administrative Regulation 850-04.  Only one issue may be addressed, per grievance.  Please see AR 850-04 IV. D. 1.  You have articulated a number of different issues and only one issue is allowed per grievance.  In this instance you have introduced two separate medical issues in one grievance (i.e. foot/back pain & trouble sleeping).  You failed to follow the grievance procedure in this matter; you have <u>not</u> exhausted your administrative remedies.

February 13, 2017 Letter (emphasis in original).  The disposition of the grievance was designated "not exhausted."  Grievance Form, ECF 23-2 at 3.

9.      On August 18, 2017, Plaintiff filed a Step One grievance for the "'substantial burden' placed upon [him] . . . for the practice of [his] 'sincerely held' beliefs."  Grievance Form, ECF 23-3 at 1.  The grievance continued with a list of nine "burdens": (1) requiring Native American offenders to wear their full CDOC uniform "in extreme heat"; (2) imposing excessive costs for wood used in religious ceremonies; (3) failing to provide running water in the Native American

religious area; (4) providing an unsanitary temporary restroom at the Native American religious area; (5) locating the Native American religious area where other offenders can disturb the ceremonies; (6) requiring Native American offenders to be strip searched upon returning from their religious area; (7) not allowing fire on half-days for pipe ceremonies; (8) not allowing offenders to cover the sweat lodge in "extreme weather" when no ceremonies were occurring; and (9) "overall prejudice and discrimination." *Id*. Plaintiff's requested "remedy is to have this facility investigated . . . and correction of ill-treatment." *Id*.

10.     Defendant Volz responded to the grievance by reiterating each of Plaintiff's nine "burdens" and providing a numbered comment in reply to each, such as, "2) Fairmarket value sets the cost for wood," "5) Safety and security is the first consideration for placement of the sweat lodge," and "8) Per AR 800-01, 'The inipi (sweat lodge) will be covered only during a sweat lodge ceremony.'" *Id*. The disposition of the grievance was designated "procedural denial." *Id*.

11.     Plaintiff filed a Step Two grievance on September 13, 2017, on which he copied the same information contained in his Step One grievance. Grievance Form, ECF 23-3 at 2.

12.     An individual named Kirk Machin responded to the Step Two grievance, stating "I will answer each point separately." *Id*. The response proceeded to provide a numbered comment in response to each of the "burdens" Plaintiff identified. *Id*. The disposition of the grievance was "denied." *Id*.

13.     On October 16, 2017, Plaintiff filed a Step Three grievance on which he copied the same information contained in his Step One and Step Two grievances. Grievance Form, ECF 23-3 at 3 (collectively, with the Step One and Step Two grievances, "Substantial Burden Grievance").

14.     On November 8, 2017, Officer DeCesaro issued a memo to Plaintiff informing him that his grievance numbered BV17/18-00116121-3 "is under investigation." Memo, ECF 23-3 at 5. The grievance referenced was Plaintiff's Substantial Burden Grievance. *See* Grievance Forms, ECF 23-3 at 1-3.

15.     On December 15, 2017, Marshall Griffith responded to the Step Three grievance by attaching a letter from Officer DeCesaro. Grievance Form, ECF 23-3 at 3; *see also* December 15, 2017 Letter, ECF 23-3 at 4. The letter stated, in part,

> The grievance procedure is outlined in Administrative Regulation 850-04. Only one issue may be addressed, per grievance. Please see AR 850-04 IV. D. 1. You have articulated a number of different issues and only one issue is allowed per grievance. . . . You failed to follow the grievance procedure in this matter; you have <u>not</u> exhausted your administrative remedies."

December 15, 2017 Letter (emphasis in original). The disposition of the grievance was designated "not exhausted." Grievance Form, ECF 23-3 at 3.

16.     On November 27, 2017, Plaintiff filed a Step One grievance for "'on-going' acts of retaliation and discrimination." Grievance Form, ECF 23-3 at 8. The grievance specifically alleged, "Directly after receiving notification from Step III Grievance Officer DeCesaro that my Step III (#R-BV17/18-00116121-3) . . . is being investigated Captain King on 11.18.17 cancelled pipe ceremony and refused to allow myself and another offender access to the sweat lodge." *Id*. Plaintiff continued that two other corrections officers told him Captain King's reason "was there wasn't enough offenders to go" but "[n]o part of AR-800-1 states a minimum amount of offenders required for pipe ceremony." *Id*.

17.     Defendant King responded to the grievance, "There is no retaliation. You will be able to go to your faith group." *Id*. The disposition of the grievance was "resolved." *Id*.

18.     On November 30, 2017, Plaintiff filed a Step Two grievance on which he copied the same

information contained in his Step One grievance.  Grievance Form, ECF 23-3 at 9.

19.     Defendant Lisac responded to the Step Two grievance, stating in part,

> the shift commander was correct in not allowing you to sweat as there was not
> enough offenders present.  In order to sweat, a minimum of 3 offenders are required
> for safety reasons; this is not discriminatory. . . . A single offender will be required
> to observe their religion in the privacy of their cell. . . . Based on this information I
> do not find that any discrimination occurred and your grievance is denied.

*Id.*  Plaintiff received the response to his Step Two grievance on December 29, 2017.  *Id.*

20.     On December 29, 2017, Plaintiff placed a kite for a Step Three grievance form in the case

manager's mail box.  Pl.'s Resp. to Defs.' Mot. for Summ. J. 9, ECF 31.  The kite's "Date

Answered" is "1-2-18."  *Id.*

21.     On January 4, 2018, Plaintiff filed a Step Three grievance on which he copied the same

information contained in his Step One and Step Two grievances.  Grievance Form, ECF 23-3 at

10 (collectively, with the Step One and Step Two grievances, "Pipe Ceremony Grievance").

22.     Marshall Griffith responded to the Step Three grievance by attaching a letter from Officer

DeCesaro.  *Id.*; *see also* February 8, 2018 Letter, ECF 23-3 at 11.  The letter stated, in part,

> Your grievance step is filed out of time.  The time frame for filing grievances is
> outlined in Administrative Regulation 850-04.  You have five calendar days in
> which to file the next step in the grievance proves.  You received the Step 2
> response on 12/29/17 and your Step 3 was not filed until 1/4/18.  The time
> constraints outlined in AR # 850-04 are now expired regarding these events, so
> there will be no further review of this matter.  You have failed to follow the
> grievance procedure in this matter; you have <u>not</u> exhausted your administrative
> remedies.

February 8, 2018 Letter (emphasis in original).  The disposition of the grievance was designated

"not exhausted."  Grievance Form, ECF 23-3 at 10.

B.     Legal Standards

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).  Only admissible evidence may be considered when ruling on a motion for summary judgment.  *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined.  *Celotex*, 477 U.S. at 322.  That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact.") (citation omitted); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005); *see also Hasan*, 935 F.3d at 1098 (""Unsubstantiated allegations carry no probative weight in summary judgment proceedings."). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

C. <u>Analysis</u>

1. *The Prison Litigation Reform Act*

The Prison Litigation Reform Act ("PLRA") requires that a claim regarding prison conditions must be exhausted before a prisoner may challenge those conditions by filing suit. *Porter v. Nussle*, 534 U.S. 516, 520 (2002) ("1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."). Specifically, the exhaustion provision states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). The burden is on Defendants to assert any failure to exhaust as a defense and they do so here pursuant to Fed. R. Civ. P. 56. Thus, if the evidence presented does not create a genuine issue of material fact as to whether Plaintiff's constitutional claims against Defendants were properly exhausted, the claims must be dismissed without prejudice. *See Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (noting that dismissal of unexhausted claims on summary judgment should be without prejudice).

Only when all possible administrative remedies have been exhausted with respect to prison conditions may a federal court consider such a claim. *Porter*, 534 U.S. at 524; *see also York v. Fed. Bureau of Prisons*, 379 F. App'x 737, 740 (10th Cir. 2010). Prison conditions for this purpose include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. The Court finds that *Porter*'s holding encompasses Plaintiff's claims, construed liberally and in the light most favorable to Plaintiff, regarding Defendants' alleged violation of his Eighth, First, and Fourteenth Amendment rights. *See id.*

2.      *Plaintiff's Claims and Defendants' Motion for Summary Judgment*

Plaintiff asserts one claim for violation of his Eighth Amendment rights against Defendants Borrego and Johnson because of delayed and denied medical treatment, and two separate claims for violation of his First and Fourteenth Amendment rights against Defendants King, Hansen, Lisac, and Volz because of substantial burdens imposed on the exercise of his religion.

Defendants move for summary judgment as to all of Plaintiff's claims, arguing Plaintiff failed to exhaust his administrative remedies as required by the PLRA.

In his Response, Plaintiff does not argue that his disputed grievances complied in fact with all procedural requirements; rather, Plaintiff argues the procedural denials should be excused and his grievances deemed to satisfy the mandatory exhaustion requirement. Specifically, Plaintiff argues the procedural denials should be excused because: (1) his grievances did not address multiple issues per grievance, as prohibited by AR 850-04; (2) CDOC did not comply with the procedural rules; (3) his grievances satisfied the purpose of the grievance procedure, evidenced by the fact that his complaints were, at some steps, addressed on the merits; and (4) his late filing of Step Three of the Pipe Ceremony Grievance was caused by the slow response of his case manager.

Defendants reply generally that Plaintiff's Response fails to raise a genuine dispute of material fact as to his failure to exhaust his administrative remedies.

### 3. Exhaustion of Claim One

Plaintiff's claim against Defendants Borrego and Johnson for violating his Eighth Amendment rights is based upon the same behavior referenced in Plaintiff's Medical Grievance. For the Court to consider this claim, Plaintiff must have exhausted all possible administrative remedies for his Medical Grievance. *Porter*, 534 U.S. at 524. If the evidence presented does not create a genuine issue of material fact as to whether Plaintiff's Medical Grievance was properly exhausted, then Defendants are entitled to summary judgment in their favor as to Plaintiff's first claim.

The Supreme Court has determined that a prison's own requirements define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 218 ("The level of detail necessary in a grievance to

comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). In this case, all parties agree that the CDOC's grievance system is governed by AR 850-04. Under that regulation, a grievance officer may deny a grievance on procedural grounds, without addressing substantive issues, when an inmate seeks redress of more than one substantive issue in a single grievance or files a grievance outside the applicable time limit. DeCesaro Aff. ¶ 12-13, ECF 23-1; *see also* December 15, 2017 Letter, ECF 23-3 at 4, and February 8, 2018 Letter, ECF 23-3 at 11. When a grievance is denied on procedural grounds, that grievance has not exhausted the grievance process. DeCesaro Aff. at ¶ 14.

Step Three of Plaintiff's Medical Grievance was procedurally denied for addressing more than one issue in a single grievance. Plaintiff responds that his grievance addressed only the single problem of "denial of medical treatment." Resp. to Defs.' Mot. for Summ. J. ¶ 10. In support, he cites AR 850-04(IV)(D)(6), which states, "Problems that arise from the same incident or set of facts will be grieved in one grievance." *Id.* at ¶¶ 9-10. Defendants reply that Plaintiff mischaracterizes the content of his grievance:

> Plaintiff made two separate requests for medical treatment, and CDOC responded by providing two disparate courses of treatment. . . . Plaintiff's dissatisfaction with the medical care he was provided in response to his two separate requests does not constitute a single problem or complaint, because those two requests and CDOC's response to them were substantively different from one another.

Defs.' Reply 2, ECF 37.

Plaintiff's argument, essentially that CDOC's evaluation and disposition of his grievance was wrong, does not excuse his non-exhaustion of administrative remedies. "The PLRA does not enable judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison

grievance systems." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (quotation omitted). Its text "suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such [special] circumstances into account." *Ross v. Blake*, —— U.S. ——, 136 S. Ct. 1850, 1856 (2016). For exhaustion to serve the goals of "eliminat[ing] unwarranted federal-court interference with the administration of prisons" and "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," the prison grievance system must be given a fair opportunity to consider the grievance. *Woodford*, 548 U.S. at 93 (quotation omitted). A prisoner who is dissatisfied with the response to his grievance must continue to pursue the proper administrative procedures to seek the relief he desires, "providing the prison with a fair opportunity" to resolve his complaint, *id.* at 94, to properly exhaust his claims. Plaintiff failed to do so here. Plaintiff's dissatisfaction with CDOC's response to his grievances must be redressed through Plaintiff's submission of grievances that comport with all applicable administrative procedures, rather than request the Court to review the CDOC's assessment of the content of its own grievances and application of its own procedural regulations.

Plaintiff next argues that even if his grievance was procedurally defective, his failure to fully exhaust should be excused, because CDOC did not comply with its own procedural rules governing the grievance process. He claims that Defendants failed to follow AR 850-04 IV(C)(2)—which states, "If a grievance is procedurally deficient the offender will be asked to cure any deficiencies and resubmit,"—because he was never asked to cure the procedural deficiencies in his grievances prior to their final denials. Resp. to Defs.' Mot. for Summ. J. ¶¶ 11-14, 17, 24,

28-29.  Plaintiff emphasizes that "the first two grievances were answered on the merits and in neither response was I asked to cure any flaws."  *Id.* at ¶ 24.  The disposition of the Step One Medical Grievance was "granted in part" and the disposition of Step Two was "denied."  Grievance Forms, ECF 23-2 at 1-2.  Neither written response to the two grievances mentioned any procedural issue with the content of Plaintiff's grievance.  *Id.*

This argument, even if true, also does not excuse Plaintiff's failure to exhaust the available administrative remedies.  As cited above, "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such [special] circumstances into account."  *Ross*, 136 S. Ct. at 1856.  Although there is no evidence on the record Plaintiff was expressly invited to cure his deficiencies, the letter he received when the Step Three grievance was procedurally denied identified the specific procedural issue with the grievance.  In response to this letter, Plaintiff could have refiled his grievance to address the procedural deficiency.  Although Plaintiff "believed that no further remedy was available" because "AR 850-04 gives no further instructions on how an offender can cure any procedural errors without prison officials request, after the final step," Resp. to Defs.' Mot. for Summ. J. ¶ 18, Plaintiff's failure to exhaust cannot be excused because of Plaintiff's purported confusion about how to proceed in the grievance process.  *See Beals v. Jay*, 730 F. App'x 633, 637 (10th Cir. 2018) ("[I]t is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." (quotation omitted)); *see, e.g.*, *Hobbs v. Okla. State Penitentiary*, 673 F. App'x. 837, 841 (10th Cir. 2016) (unpublished) (applying this concept to uphold dismissal of a

§ 1983 action based on a prisoner's failure to exhaust). There is no indication that Plaintiff asked for clarification following receipt of the Step Three response.

Lastly, Plaintiff argues that even if his grievances were procedurally defective, his failure to fully exhaust should be excused, because the facility responded to his Step One and Step Two grievances on the merits. Therefore, he concludes, his grievance satisfied the reason for the grievance procedure, namely "to allow prison officials an opportunity to address the merits of the elements to a grievance." Resp. to Defs.' Mot. for Summ. J. at 8. The Supreme Court determined that the PLRA requires "proper exhaustion," which is defined as "using **all** steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in italics in original; emphasis in bold added). The *Woodford* Court stated, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id*. at 95. Plaintiff's attempt to characterize his grievances as exhausting his administrative remedies, despite Step Three's procedural denial, contravenes *Woodford*, as well as the Supreme Court's opinion in *Ross v. Blake*, in which the Court rejected any sort of "special circumstances" exception and affirmed that mandatory PLRA exhaustion is not subject to judicial discretion. 136 S.Ct. at 1858 ("the PLRA prevent[s] a court from deciding that exhaustion would be unjust or inappropriate in a given case.").

Accordingly, the Court concludes that Plaintiff has failed to demonstrate a genuine issue of material fact as to whether his Medical Grievance properly exhausted all available administrative remedies. Therefore, the Court respectfully recommends summary judgment as to

Claim One be granted for Defendants.  As this is the only claim asserted against Defendants Borrego and Johnson, the court further recommends they be dismissed.

### 4.  Exhaustion of Claim Two

Plaintiff supports the first of his two claims that Defendants King, Hansen, Lisac, and Volz violated his First and Fourteenth Amendment rights to freely exercise his religion by identifying five burdens Defendants allegedly imposed upon him.[3]  These five burdens supporting Claim Two are five of the nine enumerated burdens Plaintiff identified in his Substantial Burden Grievance.  *See* Findings of Fact*, Section I.A. ¶ 9, *supra*.  Therefore, for the Court to consider this claim, Plaintiff must have exhausted all possible administrative remedies for his Substantial Burden Grievance.  *Porter*, 534 U.S. at 524.  In this respect, Plaintiff repeats the same three arguments he proffered for his Medical Grievance: (1) the procedural denial should be excused because the grievance only addressed a single issue; (2) the procedural denial should be excused because the CDOC failed to follow procedural rules because it never asked him to cure the procedural defects in his grievance; and (3) despite the procedural denial, his grievance exhausted the administrative remedies because it was substantively responded to and prompted an investigation.

For the reasons stated above, Plaintiff's argument that his Substantive Burden Grievance addressed only the single problem of "the 'substantial burden' placed upon [him] for the practice

---

[3]  Under Claim Two, Plaintiff alleges Defendants King, Hansen, Lisac, and Volz continuously deterred him from participating in religious ceremonies and placed a substantial burden on his participation in his sincerely held beliefs by: (1) requiring Native American offenders to be strip searched upon returning from their religious area; (2) imposing excessive costs for wood used in Native American ceremonies; (3) failing to provide running water in the Native American religious area; (4) providing an unsanitary temporary restroom for use during Native American religious ceremonies; and (5) locating the Native American religious area where other offenders can disrupt or disrespect religious ceremonies.  Am. Compl. 10-14, ECF 9.

of [his] sincerely held belief," Resp. to Defs. Mot. for Summ. J. at ¶ 21, does not excuse his non-exhaustion of the available administrative remedies. The Court cannot engage in "creative interpretation" of the exhaustion requirement or "oversee prison grievance systems." *Jernigan*, 304 F.3d at 1032. It is not the Court's role to review the CDOC's evaluation of grievances within its own grievance system.

Additionally, Plaintiff's argument that the CDOC did not ask him to cure any deficiencies and resubmit his grievance does not provide Plaintiff an "out" from the exhaustion requirement. Plaintiff was informed from the beginning that his Substantial Burdens Grievance was procedurally defective. Defendant Volz's response to Plaintiff's Step One grievance begins, "AR 850-04 Grievance Procedure IV.D.6. Each grievance shall address only one problem or complaint and include a description of the relief requested. . . . There are multiple complaints." Grievance Form, ECF 23-3 at 1. Despite the response's substantive enumerated comment on each of Plaintiff's nine complained-of burdens, the overall disposition of the grievance was designated "procedural denial." *Id.* Thus, Plaintiff was notified at the first step that his grievance was procedurally deficient under AR 850-04 for addressing too many issues, but he continued to submit identical grievances for Step Two and Step Three until he was instructed again after Step Three that he had not exhausted the administrative remedies.

Finally, Plaintiff's third argument, that any failure to fully exhaust should be excused because the facility substantively responded to his Step One and Step Two grievances and his Step Three grievance prompted an investigation, also fails for the reasoning noted above. Despite some response from CDOC, as a matter of law, all required steps were not taken and done so *properly*. *Woodford*, 548 U.S. at 90.

Accordingly, the Court concludes that Plaintiff has failed to demonstrate a genuine issue of material fact as to whether his Substantial Burden Grievance properly exhausted all available administrative remedies. Therefore, the Court respectfully recommends summary judgment be granted as to Claim Two.

### 5.    *Exhaustion of Claim Three*

Plaintiff's third and final claim asserts further violations of his First and Fourteenth Amendment rights when Defendants: (a) required Native American offenders to wear their full CDOC uniform to, from, and during Native American religious ceremonies[4]; (b) suspended the Native American religious group's use of tobacco in religious ceremonies from April 12 to May 19, 2018; (c) prevented group members from conducting a pipe ceremony on November 18, 2017; and (d) suspended all Native American religious services on May 4, 2018.[5]  Defendants concede Plaintiff fully exhausted his administrative remedies with respect to the allegations that CDOC wrongfully suspended use of tobacco use for approximately thirty days and wrongfully suspended all Native American religious ceremonies during the May 2018 suspension.  DeCesaro Aff. ¶ 27.

---

[4]  Plaintiff's Substantial Burden Grievance complains of the requirement to wear full CDOC uniforms "in extreme heat."  Grievance Form, ECF 23-3 at 1.  The Amended Complaint makes no mention of weather or "extreme heat."  Rather, it simply complains of the policy shift that occurred in August 2017 requiring full CDOC uniforms when Plaintiff had been allowed previously to wear recreation attire to and from the religious area.  Am. Compl. ¶ 4.  The Amended Complaint does not state how the requirement to wear full CDOC uniforms constitutes a burden on Plaintiff's free exercise of his religion.

[5]  No party specifically alleged the total length of the suspension of Native American services.  Plaintiff does identify May 6 and May 11, 2018 as dates that Christian and Islamic services respectively were held while Native American religious services remained suspended.  Grievance Form, ECF 23-3 at 16.  The Court, therefore, presumes the suspension lasted through at least May 12, 2018.

Because Defendants concede that the administrative remedies for some of the allegations supporting Plaintiff's claim were properly and fully exhausted, summary judgment in Defendants' favor as to the entirety of Claim Three is unwarranted. Defendants do argue, however, that Plaintiff failed to exhaust his administrative remedies with respect to the other two assertions supporting Plaintiff's third claim: the requirement that Native American offenders wear their full CDOC uniform, and Defendant's cancellation of a pipe ceremony on November 18, 2017.

a.     Exhaustion of Plaintiff's Assertion Regarding CDOC Uniforms

Plaintiff's allegation that Defendants violated his First and Fourteenth Amendment Rights by requiring him to wear the full CDOC uniforms to, during, and from Native American religious ceremonies is one of the nine burdens listed in Plaintiff's Substantial Burden Grievance. As the Court concluded above, Plaintiff has failed to demonstrate a genuine issue of material fact that his Substantial Burden Grievance properly exhausted all available administrative remedies. Therefore, the same holds true for his allegation regarding CDOC uniforms.

b.     Exhaustion of Plaintiff's Pipe Ceremony Grievance

Plaintiff's allegation that Defendants unconstitutionally prohibited him from conducting a pipe ceremony on November 18, 2017 was the subject of its own grievance. Again, for the Court to consider a claim arising from this allegation, Plaintiff must have exhausted all possible administrative remedies. *Porter*, 534 U.S. at 524. The Pipe Ceremony Grievance was procedurally denied because the Step Three grievance was filed after the applicable deadline and, thus, under AR 850-04, the grievance failed to exhaust the grievance process.

Plaintiff argues his untimely submission of Step Three of his Pipe Ceremony Grievance should be excused and the exhaustion requirement satisfied because he did not receive a Step Three

grievance form from his case manager in time to meet the filing deadline. Resp. to Defs.' Mot. for Summ. J. ¶ 37. "It is true that exhaustion is not required '[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy.'" *Beals*, 730 F. App'x at 637 (quoting *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010)). In this case, however, Plaintiff's unsupported contention is not enough to excuse his noncompliance.

Plaintiff received the response to Step Two of his Pipe Ceremony Grievance on December 29, 2017; under the applicable rules, the last day he could file his Step Three grievance was January 3, 2018. On December 29, 2017, Plaintiff submitted a kite to a case manager requesting a Step Three grievance form. Resp. to Defs.' Mot. for Summ. J. 9. Plaintiff alleges in his Response,

> I received the Step III grievance form on Jan. 3, 2018, sometime after 9:10 p.m. . . . . I wrote the Step III grievance that morning of the fourth of January and placed it in the case manager box. . . . The first of the year occurred during this time frame and I do not know why it took my case manager four days to respond to my kite, but it did[.] [S]ee Exhibit 1.

*Id*. at ¶ 33-36. Exhibit 1 to Plaintiff's Response is a copy of Plaintiff's December 29, 2017 kite requesting the Step Three form. *Id*. at 9

In support of his argument, Plaintiff provides only his Response and a copy of the kite. Plaintiff titles the body of his Response, "Declaration in Opposition to Defendant's [sic] Motion for Summary Judgement [sic]." However, Plaintiff's Response is not signed under penalty of perjury and, consequently, does not comply with 28 U.S.C. § 1746. The Court is not obligated to treat an incomplete "declaration" as an affidavit for purposes of establishing factual disputes in opposition to a summary judgment motion. *Hayes v. Marriott,* 70 F .3d 1144, 1148 (10th Cir. 1995) ("Unsworn affidavits do not raise factual issues precluding summary judgment." (citation omitted)); *see also Henderson v. Inter–Chem Coal Co.,* 41 F.3d 567, 569 n.1 (10th Cir.

1994) (noting that unsworn affidavits may be used in summary judgment proceedings, but only if they comply with the requirements of 28 U.S.C. § 1746 and are signed under penalty of perjury). The Court therefore finds that the "declaration" is not an affidavit for the purpose of resolving Defendants' summary judgment motion. *See McConnell v. Reilly*, No. 11-cv-02342-WJM-KLM, 2013 WL 1320774, at *1 (D. Colo. Feb. 26, 2013), *report and recommendation adopted*, No. 11-cv-02342-WJM-KLM, 2013 WL 1316136 (D. Colo. Mr. 29, 2013) (finding a complaint, which does not comply with the requirements of 28 U.S.C. § 1746, was not competent evidence for consideration in ruling on summary judgment motion). Accordingly, the Court only considers the copy of Plaintiff's kite in support of his argument.

The kite provides no facts upon which the Court may rely to support Plaintiff's argument that the untimeliness of his Step Three grievance should be excused. The "date answered" on Plaintiff's December 29, 2017 kite is January 2, 2018, the day before the deadline to submit a Step Three grievance. Therefore, based on the evidence presented, Plaintiff has failed to raise a genuine issue of material fact as to whether he exhausted the administrative remedies as to his allegation that Defendants unconstitutionally prohibited Plaintiff from conducting a pipe ceremony on November 18, 2017.

D.     Conclusion of the Recommendation on Defendants' Motion for Summary Judgment

Defendants have demonstrated no genuine issues of material fact exist with respect to Plaintiff's failure to exhaust the available administrative remedies for his first two claims and half of the allegations in his third claim. Therefore, the Court respectfully recommends Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies [filed July 15, 2019; ECF 23] be **granted** as to Claims One and Two and **granted in part and denied in part** as

to Claim Three. In light of this, the Court further recommends Defendants' Rule 12(b)(6) Partial Motion to Dismiss Plaintiff's Complaint [filed July 15, 2019; ECF 24] be **denied in part as moot** as to the portions of the motion that pertain to the non-exhausted claims and allegations. Finally, the Court recommends Defendants Borrego, Johnson, and Doe be dismissed from this action.

## II. Recommendation on Defendants' Rule 12(b)(6) Partial Motion to Dismiss Plaintiff's Complaint

In light of the recommendation on Defendants' Motion for Summary Judgment, Plaintiff's third claim remains as the only subject of Defendants' Rule 12(b)(6) Partial Motion to Dismiss (ECF 24). Claim Three alleges Defendants King, Hansen, Lisac, and Volz violated Plaintiff's "First Amendment rights to freely exercise [his] Native American religion and to be free from retaliation for exercising [his] religious right as well as the Equal Protection Clause." Am. Compl. 9. As two of the factual allegations supporting Claim Three were not fully exhausted, the Court considers the remaining claim and the Motion to Dismiss in terms of the fully exhausted factual allegations: that Defendants violated Plaintiff's above-mentioned rights when they (a) suspended the Native American religious group's use of tobacco in religious ceremonies from April 12 to May 19, 2018; and (b) suspended all Native American religious activities on May 4, 2018 "until further notice," but permitted Christian and Islamic religious ceremonies to occur during that time.

Defendants move for dismissal of the claim in its entirety against Defendants in their individual capacities and dismissal of the claim against Defendants in their official capacities insofar as it seeks money damages. Defendants explicitly do not seek dismissal of the official capacity claim seeking prospective, injunctive relief; however, they summarily claim Plaintiff is not seeking prospective, injunctive relief with respect to his remaining allegations. Plaintiff responds that to the extent he is seeking declaratory or injunctive relief against Defendants for the

official capacity claims, his claims are not barred by the Eleventh Amendment. He continues that Defendants are not entitled to qualified immunity because the First Amendment, Fourteenth Amendment, and Equal Protection Clause are clearly established law. Defendants' reply focuses on the statute of limitations of Claim One and one of Plaintiff's allegations under Claim Two. Given the above recommendation on Defendant's Motion for Summary Judgment, Defendants' reply is irrelevant to the analysis below.

The Court concludes Plaintiff's claim against Defendants in their official capacities is barred by the Eleventh Amendment insofar as the claim seeks declaratory relief or money damages. Defendants do not move to dismiss Plaintiff's claim against them in their official capacities seeking prospective, injunctive relief. Additionally, taking the facts alleged in the Amended Complaint as true, Plaintiff states a plausible violation of his First Amendment free exercise right, but fails to carry his burden that the right was clearly established at the time of Defendants' allegedly unlawful conduct. Plaintiff fails to state plausible claims for unconstitutional retaliation or for violation of the Equal Protection Clause. Therefore, Plaintiff fails to carry his burden in light of the Defendants' asserted qualified immunity as to all three aspects of Claim Three. Accordingly, this Court respectfully recommends that Defendant's Rule 12(b)(6) Partial Motion to Dismiss Plaintiff's Complaint be granted in part and denied in part as moot, noting that Plaintiff's claim against Defendants King, Hansen, Lisac, and Volz in their official capacities seeking prospective injunctive relief for violation of his First Amendment free exercise right remains.

A.    Statement of Facts

The following are the factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) relevant to Plaintiff's remaining claim from the Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is incarcerated by the CDOC at the Buena Vista Correctional Facility ("BVCF"). He is a member of the Native American religious group at BVCF and has a sincerely held belief in his religion.  Plaintiff participates in religious activities such as sweat lodges and pipe ceremonies.  Certain rituals and beliefs require practices that cannot be conducted inside a cell or building and require a designated area; BVCF has such an area.  Defendants King, Hansen, Lisac, and Volz are part of the management team and are responsible for making policies and decisions that affect security and religious activities.

On April 21, 2018, Defendant Volz gave notice to Plaintiff and the Native American religious group that their use of tobacco in religious ceremonies was suspended for approximately thirty days (from April 21, 2018 to May 19, 2018), because one of the substance staff at the facility said the group's tobacco was found in the cell of offender Ted Mitchell.  Mr. Mitchell is not, and has never been, a member of the Native American religious group and has never been to any of the group's ceremonies to have access to the tobacco.  Defendants Hansen, Lisac, and Volz made the decision to suspend the use of tobacco in Native American religious ceremonies without any CDOC policy permitting this as a remedy for the tobacco found in Mr. Mitchell's cell.

On May 4, 2018, Lieutenant Atchison informed Plaintiff that Defendants Hansen, Lisac, and Volz made the decision to suspend all Native American religious activities until further notice.

During the time that Native American religious services were suspended, Christian and Islamic religious services occurred. Specifically, a Christian service was held on May 6, 2018 and an Islamic service on May 11, 2018. On May 13, 2018, Plaintiff filed a Step One grievance complaining about the suspension of religious services. Defendant Volz responded to the grievance, stating that during lock down and modified operations all non-supervised faith observance were suspended. Plaintiff could not find any policy with regards to religious activities with volunteers compared to religious activities that do not have volunteers. While the Native American religious group does not have volunteers who supervise its religious activities, their faith area is under surveillance and surrounded by fourteen-foot fences topped with razor wire.

B.      Legal Standards

1.      *Fed. R. Civ. P. 12(b)(1)*

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) (recognizing federal courts are courts of limited jurisdiction and "there is a presumption against our jurisdiction"). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). Accordingly, Plaintiff bears the burden in this case of establishing that this Court has jurisdiction to hear his claim.

2.      *Fed. R. Civ. P. 12(b)(6)*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more

than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation and citation omitted).

### 3. *Treatment of a Pro Se Plaintiff's Complaint*

A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico,* 113 F.3d 1170, 1173-74 (10th Cir.1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* Accordingly, the Court must "not supply additional facts, nor … construct a legal theory for plaintiff that assumes facts that have not been pleaded."

*Peterson v. Shanks,* 149 F.3d 1140, 1143 (10th Cir.1998) (citing *Dunn v. White,* 880 F.2d 1188, 1197 (10th Cir.1989)).

C.     Analysis

Plaintiff's remaining claim for relief alleges Defendants King, Hansen, Lisac, and Volz violated Plaintiff's constitutional rights to freely exercise his religion, to be free from retaliation for exercising his religion, and to Equal Protection.  Although Plaintiff alleged this as a single claim, the Court construed Claim Three as containing three separate claims based on the same conduct.  The Court considers the claims within Claim Three and the Motion to Dismiss with respect to the factual allegations Plaintiff fully exhausted: that Defendants violated Plaintiff's above-mentioned rights when they (a) suspended the Native American religious group's use of tobacco in religious ceremonies from April 12 to May 19, 2018; and (b) suspended all Native American religious activities on May 4, 2018 "until further notice," but permitted Christian and Islamic ceremonies to occur during that time.  Plaintiff asserts Claim Three against Defendants in both their official and individual capacities, and the Court will analyze the different capacities in turn.

*1.      Claim Three against Defendants in their Official Capacities*

Defendants move to dismiss Plaintiff's remaining claim against them in their official capacities insofar as it seeks money damages or declaratory relief; in a footnote, they expressly state they "do not seek dismissal of Plaintiff's First and Fourteenth Amendment official capacity claims seeking solely prospective relief."  Mot. to Dismiss 1 n.1.  However, Defendants summarily state that, as to the allegations supporting Claim Three, Plaintiff is not seeking prospective,

injunctive relief.  Plaintiff's claim against Defendants in their official capacities, and his requested relief, are discussed below.

           a.       Official Capacity Claim Seeking Money Damages and Declaratory Relief

Defendant argues that to the extent Plaintiff seeks money damages and declaratory relief, his claim is barred by the Eleventh Amendment.  In his Response, Plaintiff states, without citing to authority, that "[t]he Eleventh Amendment does not forbid suing state officials . . . for declaratory or injunctive [relief] in their official capacities."  Pl.'s Resp. to Defs.' Mot. to Dismiss ¶ 1, ECF 32.  However, he continues, citing the Supreme Court and Tenth Circuit, "[t]o get damages from state officials, you must name the defendants in their individual capacities. . . . By suing them in their official capacities I am seeking injunctive relief."  *Id*. at ¶ 2, 4.

"Under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent." *Hunt v. Colorado Dep't of Corr.*, 271 F. App'x 778, 780 (10th Cir. 2008).  "State sovereign immunity is more than immunity from liability—it actually deprives federal courts of subject-matter jurisdiction." *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011).  Claims against state officials in their official capacities are essentially claims against the state entity.  *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted); *see also Bueno v. Chekush*, 355 F. Supp. 3d 987, 997 (D. Colo. 2018) ("Sovereign immunity extends to state agencies functioning as an arm of the state, including the CDOC.  To the extent Defendants are being sued in their official capacities, they may assert

Eleventh Amendment immunity as an arm of the state in that they assume the identity of the CDOC." (citations and quotations omitted)).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff seeks *prospective* enforcement of his or her federal rights. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (emphasis added). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

> As to Claim Three against Defendants in their official capacities, Plaintiff requests
>
> Declaratory and injunctive relief declaring: 1. for the Court to rule that the Defendants did retaliate against Plaintiff and that all past, present, and future retaliation will not continue. 2. Plaintiff be allowed to order a video game console (Xbox or PS4) of Plaintiff's choice, at his expense and 30 games and 50 movies to all be in Plaintiff's possession indefinitely and at any facility or custody level Plaintiff is housed at and $1,500.00 canteen credit.

Am. Compl. 21-22. Given the clearly established law, the request "for the Court to rule that the Defendants did retaliate against Plaintiff," which is declaratory in nature, and the request for "$1,500.00 canteen credit," which is for damages, are barred by the Eleventh Amendment. Accordingly, the Court respectfully recommends Plaintiff's claim against Defendants in their official capacities be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) insofar as it seeks the identified declaratory relief and money damages.

     b.   Official Capacity Claim Seeking Prospective Injunctive Relief

Defendants do not attempt to parse out and characterize the relief Plaintiff requested against Defendants in their official capacities. Rather, Defendants state simply in a footnote that Plaintiff "is not seeking prospective, injunctive relief involving those grievances," referring to the

allegations based on the suspensions of (1) tobacco use in religious ceremonies and (2) all Native American religious activities. Mot. to Dismiss 2 n.1. The footnote continues that because Plaintiff is not seeking prospective, injunctive relief involving those grievances, "they would be resolved entirely by the Motion to Dismiss." *Id*. This footnote is particularly perplexing given the caveat in the Motion's conclusion, requesting "that all claims in Plaintiff's Amended Prisoner Complaint except for the First and Fourteenth official capacity claims seeking solely prospective injunctive relief be dismissed." Defs.' Mot. to Dismiss 10.

As analyzed below in Section II.C.2.a.i., at this motion to dismiss stage, Plaintiff states a plausible claim for violation of his First Amendment right to freely exercise his religion. Although Defendants are entitled to qualified immunity from liability for this potential violation in their personal capacities, qualified immunity does not shield them in their official capacities to the extent Plaintiff seeks prospective, injunctive relief. Examining Plaintiff's prayer shows that Defendants' footnote mischaracterizes what Plaintiff explicitly requests. Plaintiff requests "for the Court to rule that . . . present[] and future retaliation will not continue," and that Defendants be required to allow Plaintiff to purchase, at his own expense, a video game console. Am. Compl. 21. These requests are for neither declaratory relief nor damages.

That said, the Court notes there are apparent issues with the relief requested and its causal connection to Defendants' alleged unlawful activity given the legal theory Plaintiff asserts as to his entitlement to relief. Defendants, however, did not brief any such argument. They merely supplied the Court with the assurance Plaintiff "is not seeking prospective, injunctive relief." Mot. to Dismiss 2 n.1. Defendants may raise concerns with Plaintiff's legal theory of recovery in an appropriate motion.

Because Defendants' Partial Motion to Dismiss explicitly does not seek dismissal of Plaintiff's claims against Defendants in their official capacities seeking prospective injunctive relief and Plaintiff's prayer does contain some forms of prospective, injunctive relief, the Court respectfully recommends that Defendants' Motion to Dismiss be granted as to the official capacity claim, noting that Plaintiff's claims against Defendants in their official capacities seeking prospective injunctive relief remain to the extent the Plaintiff seeks an injunction (1) against present and future retaliation and (2) requiring Defendants to allow him to buy a video game console.

### 2. *Claim Three against Defendants in their Individual Capacities*

Defendants move to dismiss Plaintiff's remaining claim against them in their individual capacities in its entirety arguing they are entitled to qualified immunity. Plaintiff responds that Defendants have not proven qualified immunity applies, because "[t]he First Amendment, RLUIPA[6], the Fourteenth Amendment, and Equal Protection Clause are well established law." Resp. to Defs.' Mot. to Dismiss ¶ 11.

---

[6] The Religious Land Use and Institutionalized Person Act of 2000, 42 U.S.C. § 2000cc–1 et seq. ("RLUIPA"). Although Plaintiff quotes RLUIPA in his Response, *see* Resp. to Defs.' Mot. to Dismiss ¶¶ 11-12, he makes no mention of the statute in his Amended Complaint. Plaintiff's second claim for relief does allege, "Defendants . . . continuously deter the Plaintiff from participating in sweat lodge and pipe ceremonies by placing a substantial burden upon Plaintiff." Am. Compl. 10 ¶ 1. Alleging a "substantial burden" is one of the elements of a RLUIPA claim. *Williams v. Wilkinson*, 645 F. App'x 692, 699 (10th Cir. 2016) (to state a RLUIPA claim, a plaintiff must plead: "an allegation the plaintiff wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." (quotation and citation omitted)). Construing Plaintiff's pleadings liberally, *Whitney,* 113 F.3d at 1173, the Court could understand Plaintiff to assert his second claim for relief pursuant to RLUIPA, as well as the First and Fourteenth Amendment.

Even if the Court were to construe Plaintiff's second claim as made pursuant to RLUIPA, all the allegations supporting Plaintiff's second claim for relief were not properly exhausted, and the Court, therefore, recommended Judge Jackson grant summary judgment in Defendants' favor as to this claim. *see* Section I.C.4., *supra*; *see also Cutter v. Wilkinson,* 544 U.S. 709, 723 n.12

33

Qualified immunity protects from litigation a public official whose conduct did not violate clearly established law at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id*.

When a defendant asserts qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). To overcome a defendant's qualified immunity, "[t]he plaintiff must demonstrate on the facts alleged *both* that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id*. (emphasis added) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

a.    Free Exercise under the First and Fourteenth[7] Amendments

---

(2005) ("[A] prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."). Plaintiff's third claim for relief is based on alleged violations of Plaintiffs' "First Amendment rights to freely exercise [his] Native American religion and to be free from retaliation for exercising [his] religious right as well as the Equal protection Clause." Am. Compl. 14 ¶ 1. Plaintiff makes no mention of RLUIPA or "substantial burden[s]" in his third claim for relief. Therefore, the Court does construe Plaintiff's third claim for relief, which is the only claim remaining at issue for purposes of the Motion to Dismiss, as made pursuant to RLUIPA. Accordingly, the Court disregards Plaintiff's mention of RLUIPA in his Response to Defendants' Motion to Dismiss.

[7] The First Amendment right to free exercise of religion is incorporated against the States through the Due Process Clause of the Fourteenth Amendment. *Stromberg v. California*, 283 U.S. 359 (1931); *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

Claim Three alleges, in part, Defendants violated Plaintiff's constitutional right to freely exercise his religion when they suspended use of tobacco in Native American religious ceremonies from April 12 to May 19, 2018 and suspended all Native American religious activities on May 4, 2018 "until further notice." With respect to this part of Plaintiff's claim, the Court begins the qualified immunity analysis with the first prong, whether the Plaintiff's rights were violated.

i.   Violation of Plaintiff's First Amendment Free Exercise Right

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. Although inmates retain First Amendment rights, those rights are not without reasonable limitations. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987). "In order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry. First, the prisoner-plaintiff must [allege] that a prison regulation substantially burdened sincerely-held religious beliefs." *Williams v. Wilkinson*, 645 F. App'x 692, 704 (10th Cir. 2016) (quotation omitted). With respect to this inquiry, Plaintiff "must assert conscious or intentional interference with his free exercise rights to state a valid claim under Section 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *see Ralston v. Cannon*, 884 F.3d 1060, 1063 n.3 (10th Cir. 2018). If the initial substantial burden inquiry is satisfied, Defendants may then "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quotation omitted). At that point, the court then applies a balancing test to determine the reasonableness of the regulation. *Id.* at 1218-19; *see Turner v. Safley,* 482 U.S. 78, 89-91 (1987) (identifying the four factors relevant to whether penological interests justify the conduct burdening the prisoner's free

exercise).  Only the first of these inquiries is relevant at the motion-to-dismiss stage.  *Williams*, 645 F. App'x at 704.

For purposes of Rule 12(b)(6), Plaintiff has adequately stated a First Amendment free exercise claim if the Amended Complaint plausibly alleges that Defendants substantially burdened the exercise of his sincerely-held religious belief.[8]  "[A] substantial burden exists 'when a government . . . prevents participation in conduct motivated by a sincerely held religious belief.'" *McKinley v. Maddox*, 493 F. App'x 928, 933 (10th Cir. 2012) (quoting *Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1321 (10th Cir. 2010)).  The district court in *McKinley* dismissed a plaintiff-prisoner's free exercise claim, reasoning he had not alleged a substantial burden on the exercise of his religious beliefs based on a temporary delay in being permitted to attend church services.  *Id*. at 932.  In reversing this decision, the Tenth Circuit stated the plaintiff alleged "more than an isolated or de minimus burden on his exercise of his sincerely-held religious belief" when he claimed he was intentionally prevented from attending church services for a month.  *Id*. at 933.

In this case, Plaintiff alleges Defendants violated his First Amendment Rights when they (1) suspended the Native American religious group's use of tobacco in religious ceremonies for approximately thirty days (from April 12 to May 19, 2018), and (2) suspended all Native American religious services for more than seven days[9] in May 2018.  Plaintiff's allegations are analogous to

---

[8] The Tenth Circuit has said "[t]he first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held." *Kay*, 500 F.3d at 1218 (quotation omitted).  As no party disputes that Plaintiff's beliefs are religious in nature or are sincerely held, the Court assumes both inquiries are satisfied and proceeds in its analysis.

[9] The Amended Complaint provides that the suspension of all Native American religious activities began May 4, 2018 and was still in place when an Islamic ceremony was held on May 11, 2018.

those asserted in *McKinley* and are clear circumstances in which the government prevented participation in conduct motivated by a sincerely held religious belief.  At the Motion to Dismiss stage, this inquiry is the only relevant step.  Defendants are free to identify what they claim are the legitimate penological interests justifying the impinging conduct beyond the context of this procedural stage.  Therefore, the allegations, viewed in the light most favorable to Plaintiff, demonstrate that Defendants intentionally or consciously substantially burdened Plaintiff's free exercise of his religion such that Plaintiff has alleged Defendants violated his constitutional rights.

This determination does not end the inquiry.  The Court next turns to the second half of the two-pronged qualified immunity analysis.

### ii.  Whether the Right Was Clearly Established

To overcome Defendants' asserted qualified immunity, Plaintiff must demonstrate, on the facts alleged*,* that his right was clearly established at the time of the alleged unlawful activity.  *Riggins*, 572 F.3d at 1107 (citing *Pearson*, 555 U.S. at 232).  "In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Farrell v. Montoya*, 878 F.3d 933, 936-37 (10th Cir. 2017) (quoting *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016)).

Plaintiff responds to the Motion to Dismiss by stating, "[t]he First Amendment, RLUIPA, the Fourteenth Amendment, and Equal protection Clause are well established law."  Resp. to Defs.' Mot. to Dismiss ¶ 11.  He continues, "'[f]or a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right.' *Wilson v. Motano* [sic], 715 F.3d 874 [sic], 852 (10th Cir.

2013)."[10]  Resp. to Defs.' Mot. to Dismiss ¶ 18.  While Plaintiff seems to cite to *Wilson* only for the above-quoted proposition, if he meant the cite to provide a Tenth Circuit decision on point, his reliance on *Wilson* would be misplaced.  In *Wilson*, the plaintiff brought a Section 1983 claim against several individual police officers alleging he was unlawfully detained and deprived of his constitutional right to a prompt probable cause determination.  *Wilson*, 715 F.3d at 850.  As *Wilson* is the only case Plaintiff cites to in his Response with respect to the "clearly established" prong, and the facts of *Wilson* pertain to rights arising under an entirely different constitutional provision, Plaintiff has failed to satisfy his burden of demonstrating his right at issue was clearly established at the time of the alleged unlawful activity.

The Court is mindful of the Tenth Circuit's admonition that a plaintiff bears the burden of citing to the court what he or she thinks constitutes clearly established law.  *See Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010).  The cases following this requirement, however, typically involve plaintiffs who are represented by counsel.  *See, e.g., Gutierrez*, 841 F.3d at 903; *Rojas v. Anderson*, 727 F.3d 1000, 1005-06 (10th Cir. 2013); *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013).  In fact, the Tenth Circuit has recently reversed a trial court's dismissal of a *pro se* plaintiff's excessive force claim—where the trial court found the plaintiff had failed to identify a case demonstrating his right was clearly established—by itself pointing to a Supreme Court case sufficiently similar to the facts alleged and finding the plaintiff's right was clearly established.  *See Ali v. Duboise*, 763 F. App'x 645, 651-52 (10th Cir. 2019).

Consistent with such Tenth Circuit cases, the Court examined Tenth Circuit and Supreme Court precedent to determine "whether the violative nature of [the defendants'] particular

---

[10] *Wilson v. **Montano*** can be found on page **847** of the Federal Reporter, 3rd series.

conduct is clearly established." *Ashcroft v. al–Kidd*, 563 U.S. 731, 721 (2011). *See Sause v. Bauer*, 859 F.3d 1270, 1276 (10th Cir. 2017) ("[B]ecuase [plaintiff] fails to identify—and our independent research also fails to yield—any such authority, we conclude the law isn't clearly established."). To do so, the Court was required to define the constitutional right at issue. How broadly to define the constitutional right is crucial to qualified immunity analysis. *Boles v. Neet*, 486 F.3d 1177, 1183 (10th Cir. 2007). "In phrasing the inquiry, courts must be careful to reach the proper level of concreteness without overly limiting the factual context." *Melton v. City of Okla. City,* 879 F.2d 706, 729 n.37 (10th Cir.1989), *vacated in part en banc,* 928 F.2d 920 (10th Cir.1991) ("Too general a formulation would 'convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" (quoting *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987))). The right in this case is not simply an incarcerated individual's access to religious ceremonies generally, as this would formulation is so broad as to preclude qualified immunity in every instance. Rather, the Court looked for Supreme Court or Tenth Circuit cases in which a temporary suspension of a prisoner-plaintiff's access to religious ceremonies was held to be a violation of the plaintiff's constitutional free exercise right.

The Court was unable to find Tenth Circuit or Supreme Court authority that would have given Defendants notice that a brief suspension of tobacco use or of all religious ceremonies would violate Plaintiff's First Amendment free exercise right. While *McKinley*, discussed above, stated the plaintiff alleged "more than an isolated or de minimus burden on his exercise of his sincerely-held religious belief" when he claimed he was delayed from attending off-site church services for a month, the court in that case did not hold that such a delay was actually a violation of plaintiff's

constitutional rights. 493 F. App'x at 933. Rather, the court remanded the case as further steps of analysis were required to determine whether the delay in church access had actually violated the plaintiff's First Amendment rights. *Id*. This case, therefore, does not demonstrate that any reasonable individual in Defendants' positions would have known their behavior violated the First Amendment. *See al–Kidd*, 563 U.S. at 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149.

Plaintiff did not allege, nor did this Court find, Supreme Court or Tenth Circuit precedent clearly establishing Plaintiff's asserted rights at the time of Defendant's alleged unlawful conduct. Accordingly, Plaintiff fails to allege facts sufficient to carry his burden under the second prong of qualified immunity analysis, and the Court recommends Defendants are entitled to qualified immunity from liability in their individual capacities for Plaintiff's free exercise allegation under Claim Three.

### b. Retaliation in Violation of First Amendment

Claim Three also contains an allegation that Defendants violated Plaintiff's First Amendment right "to be free from retaliation for exercising [his] religious right." Am. Compl. 9. With respect to this part of Plaintiff's claim, the Court begins the qualified immunity analysis with the first prong, whether the Plaintiff's rights were violated.

"Prison officials may not retaliate against an inmate because of the inmate's exercise of First Amendment rights." *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 751 (10th Cir.), *cert. denied*, 140 S. Ct. 196 (2019); *see Peterson*, 149 F.3d at 1144. In order to state a First Amendment retaliation claim, Plaintiff must allege:

that (1) he was engaged in constitutionally protected activity; (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the government's actions were substantially motivated as a response to his exercise of constitutionally protected conduct.

*Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic*, 582 F.3d 1155, 1165 (10th Cir. 2009).

"An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (emphasis in original) (quotation and citation omitted); *see Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."). Additionally, "a plaintiff must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson*, 149 F.3d at 1144 (quotation and citation omitted).

Plaintiff alleges that Defendants' suspension of the Native American religious group's tobacco use from April 21 to May 19, 2018 was retaliatory. Am. Compl. 16 ¶ 12. In support, Plaintiff alleges Defendants Volz, Hansen, and Lisac made the decision to suspend tobacco use after the groups' tobacco mix had been found in the cell of offender Ted Mitchell, who was not and never had been a member of the Native American religious group, without any CDOC policy allowing the suspension as a remedy. *Id*. at ¶¶ 9-11. Plaintiff argues, once the tobacco was removed from Mr. Mitchell's possession, there was no threat to safety or security and, "[t]hus, the suspension was retaliatory." *Id*. at ¶ 12.

Although Plaintiff alleges Defendants violated his right to be free from retaliation for exercising his religious rights, taking the well-pleaded facts as true, Plaintiff does not state a plausible claim for unconstitutional retaliation. First, Plaintiff does not allege he was engaged in

constitutionally protected activity. Although the tobacco use is part of his religious ceremonies, the complaint does not allege Defendants reacted to Plaintiff's religious activities. Rather, the Amended Complaint plainly presents that Defendants were reacting to the presence of the Native American religious group's tobacco in a non-practitioner's cell. Additionally, Plaintiff does not allege specific facts that the government's actions were substantially motivated as a response to his exercise of constitutionally protected conduct. The facts as Plaintiff presented them, with reasonable inferences drawn in Plaintiff's favor, are that Defendants suspended tobacco use as a disciplinary reaction to the tobacco mix found with an offender who should not have had possession, not as a reaction to Plaintiff's exercise of his religion. Plaintiff's allegations do not plausibly state that but for a retaliatory motive, the tobacco suspension would not have occurred.

Accordingly, Plaintiff fails to allege facts sufficient to carry his burden under the first prong of qualified immunity analysis, and the Court recommends Defendants are entitled to qualified immunity from liability in their individual capacities for Plaintiff's retaliation allegation under Claim Three.

> c.        Religious Discrimination under the Equal Protection Clause[11]

Lastly, Plaintiff's Claim Three also invokes the Equal Protection Clause and alleges Defendants violated Plaintiff's constitutional rights when they suspended all Native American

---

[11] To the extent Plaintiff's claim for religious discrimination can be construed as arising under the First Amendment in addition to the Equal Protection Clause of the Fourteenth Amendment, the claim fails for the same reason as Plaintiff's Equal Protection Claim. *See Carr v. Zwally*, 760 F. App'x 550, 554 (10th Cir. 2019) ("The Supreme Court has stated that '[w]here the claim is invidious discrimination in contravention of the First . . . Amendment[ ], [its] decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose.'" (quoting *Iqbal*, 556 U.S. at 676-77, 129 S.Ct. 1937)).

religious services for a period of time in May of 2018, but permitted Christian and Islamic services to occur. Plaintiff states that "[n]o religious group is the same, but all are afforded equal protection and an 'even-handed' treatment is required." Am. Compl. 17 ¶ 17. In analyzing Defendants' asserted qualified immunity for this claim, the Court begins with the first prong, whether Defendants violated Plaintiff's rights.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Thus, to state a valid claim for violation the Equal Protection Clause, taking all well-pleaded allegations as true, Plaintiff must allege that his treatment differs from that of similarly-situated inmates. *Id.*; *see also Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006). Plaintiff must also present specific facts which demonstrate discriminatory intent or purpose. *See SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012) ("[F]or a constitutional violation to take place, an intent to discriminate must be present"); *see also Gray v. Sorrels*, 744 F. App'x 563, 573 (10th Cir. 2018). "'Discriminatory purpose' [] implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (citation omitted). "It is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor." *Gray*, 744 F. App'x at 573 (quotation omitted).

Taking the facts in the Amended Complaint as true, Plaintiff does allege he was treated differently than similarly situated inmates. The Court assumes the group of similarly situated

inmates for the point of this analysis is inmates who attend religious services. Plaintiff alleges that during a time he was prohibited from attending or conducting his religious ceremonies, Christian and Islamic inmates were allowed to conduct their religious ceremonies. Although Plaintiff's allegation is phrased as general disparate treatment of the Native American religious group, Plaintiff still alleges disparate treatment applicable to himself individual because he is a member of that group. *See Abdulhaseeb v. Saffle*, 65 F. App'x. 667, 675 (10th Cir. 2003) (recognizing that plaintiff-inmate's allegations on behalf of himself which alleged discriminatory action against the Muslim community as a whole, of which he was member, were sufficient to state a claim on behalf of himself).

While Plaintiff alleges different treatment from similarly situated inmates, the allegations in the Amended Complaint, taken as true, fail to make a plausible claim that Defendants acted with discriminatory intent or purpose. In the Amended Complaint, Plaintiff explains he filed a grievance with the prison, which was later denied, to complain about the complete suspension of Native American religious ceremonies. Describing the denial, Plaintiff explains that Defendant Volz "essentially stat[ed] that during lock down and modified operations all non-supervised faith observances were suspended." Am. Compl. 17 ¶ 15. He then confirms that the Native American religious group does not have volunteers to supervise the religious activities. *Id*. at ¶ 16. Nowhere in the Amended Complaint does Plaintiff allege Defendants made the decision to suspend either the use of tobacco or the Native American religious ceremonies due to a discriminatory intent or purpose. Not only this, but by reiterating the justification provided when his grievance was denied, Plaintiff's pleadings even suggest that the disparate treatment he allegedly received was the result of neutral and generally applicable policy.

Taking all well-pleaded facts as true, Plaintiff fails to allege Defendants treated him differently because of, not merely in spite of, the adverse affects on him as a member of the Native American religious group. Therefore, Plaintiff failed to carry his burden under the first prong of qualified immunity analysis, and the Court recommends Defendants are entitled to qualified immunity from Plaintiff's discrimination claim under Claim Three.

D.     Conclusion of the Recommendation on Defendants' Partial Motion to Dismiss

Settled law bars Plaintiff's claims against Defendants in their official capacitates seeking declaratory relief or money damages. Turning to Plaintiff's claims against Defendants in their individual capacities, Plaintiff fails to carry his burden against Defendants' asserted qualified immunity defense. Taking all well-pleaded facts of the Amended Complaint as true, Plaintiff fails to allege his free exercise right, as implicated by his allegations, was clearly established at the time of the Defendants' allegedly unlawful conduct and fails to allege Defendants actually violated his constitutional rights with respect to retaliation or Equal Protection. Therefore, the Court respectfully recommends that Defendants' Rule 12(b)(6) Partial Motion to Dismiss Plaintiff's Complaint as to all claims that remain pending after Summary Judgment [filed July 15, 2019; ECF 24] be **granted in part** and **denied in part as moot**.[12]

---

[12] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge

To the extent that Plaintiff seeks prospective, injunctive relief against Defendants King, Hansen, Lisac, and Volz in their official capacities for their alleged violation of his free exercise right under the First Amendment, Plaintiff's claim should proceed.

Dated at Denver, Colorado, this 19th day of December, 2019.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

---

that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).