IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 19-cv-00371-RBJ-MEH

CHARLES LAMONT WILLIAMS,

     Plaintiff,

v.

DEBORAH BORREGO,
DAYNA JOHNSON,
JENNIFER HANSEN,
DAVID LISAC,
REBECCA VOLZ,
ANDREW KING, and
JOHN DOE,

     Defendants.

---

## ORDER

---

This case is before the Court on Magistrate Judge Michael E. Hegarty's recommendation, ECF No. 40, on defendants' motion for summary judgment, ECF No. 23, and partial motion to dismiss, ECF No. 24, as well as plaintiff's objections to the recommendation, ECF No. 48, and defendants' response, ECF No. 53. For the following reasons, the recommendation is adopted in part, and both motions are granted in part and denied in part.

## BACKGROUND

Mr. Charles Lamont Williams is incarcerated in the Buena Vista Correctional Facility operated by the Colorado Department of Corrections ("CDOC"). ECF No. 40 at 3. He alleges that for two years, he went without sufficient medical treatment for his serious medical conditions, which caused him excruciating pain. ECF No. 1. He also alleges that defendants

imposed unacceptable conditions on his observance of Native American religious ceremonies, including forcing him to pay extremely high prices for materials, strip searching him after services, and denying him access to tobacco used in ceremonies.  *Id*.  He also alleges defendants retaliated against him for exercising his religious rights by imposing unfair conditions on observance and eventually suspending observance of Native American services completely.  *Id*.  Mr. Williams filed various grievances through the CDOC grievance process.  However, at the final step of the process, "Step III," several of his grievances were denied either because they were not timely filed or because they contained more than one issue in violation of the grievance procedure.  ECF No. 40 at 5–8.

On February 11, 2019 Mr. Williams filed this 42 U.S.C § 1983 action against several CDOC officers.  ECF No. 1.  He brought one claim under the Eighth Amendment for failure to provide adequate medical care and two claims under the First and Fourteenth Amendments for violation of his religious free exercise rights.

On December 19, 2019 Magistrate Judge Hegarty issued a recommendation addressing defendants' motion for summary judgment for failure to exhaust administrative remedies and defendants' partial motion to dismiss, ECF No. 23, ECF No. 24, filed by defendants Debora Borrego, Jennifer Hansen, Dayna Johnson, Andrew King, David Lisac and Rebecca Volz.  ECF No. 40.  Judge Hegarty recommends that I grant defendants' motion for summary judgment due to failure to exhaust remedies regarding Ms. Williams' first and second claim but grant in part and deny in part the motion regarding Mr. Williams' third claim.  *Id*.  Judge Hegarty then recommends that I deny defendants' partial motion to dismiss as moot regarding Mr. Williams' first and second claims, and his third claim against defendants in their official capacity for injunctive relief, and that I grant the motion regarding the remainder of Mr. Williams' third

claim.  ECF No. 40 at 2–3.  The recommendation is incorporated herein by reference.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

The recommendation advised the parties that specific written objections were due within fourteen (14) days after being served with a copy of the recommendation, and that failure to make timely objections may bar de novo review by the district judge of the magistrate judge's proposed findings and recommendations.  ECF No. 40 at 45.  On December 23, 2019, Mr. Williams filed a change of address notice, stating that he was being moved from Colorado Department of Correction ("CDOC") custody to Douglas County Jail, that he did not know how long he would remain at Douglas County Jail, and requesting notice at both addresses.  ECF No. 41.  Subsequent attempt to deliver Judge Hegarty's recommendation to Mr. Williams at Douglas County Jail were returned as undeliverable.  ECF Nos. 43, 44.  Finally, on January 23, 2020 Mr. Williams was served with a copy of the recommendation at the CDOC Buena Vista Correctional Facility.  ECF No. 45.

On February 3, 2020 Mr. Williams filed a request for extension of time to file objections to the recommendation, citing his limited access to the law library.  ECF No. 46.  Mr. Williams asked for an extension until February 25, 2020.  *Id*.  On February 4, 2020 this Court granted an extension of "14 days plus one extra week" from Mr. Williams' stated receipt of the materials on January 28, 2020, accounting for Mr. Williams' stated limitations.  ECF No. 47.  The Court's order stated that objections were due February 18, 2020.  Mr. Williams filed objections on February 18, 2020.  ECF No. 48.

## STANDARD OF REVIEW

### A. <u>Magistrate Judge Recommendation</u>

When a magistrate judge makes a recommendation on a dispositive motion, the district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is sufficiently specific if it "focus[es] the district court's attention on the factual and legal issues that are truly in dispute." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). In the absence of a timely and specific objection, "the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also* Fed. R. Civ. P. 72 advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). Legal theories raised for the first time in objections to a magistrate judge's recommendation are deemed waived. *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2011).

### B. <u>Motion for Summary Judgment</u>

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249–50. (internal citations omitted). The Court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### C. <u>Motion to Dismiss</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept well-pled allegations as true, purely conclusory statements are not entitled to this presumption. *Id.* at 678, 681. Therefore, so long as the plaintiff pleads sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible," she has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570.

### D. <u>Pro se Litigants</u>

When a case involves pro se litigants, courts will review their "pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). Nevertheless, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A "broad reading" of a pro se plaintiff's pleadings "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* Pro se parties must "follow the same rules of

procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks and citations omitted).

## ANALYSIS

Mr. Williams objects to Judge Hegarty's finding that he had failed to exhaust his remedies for any of his grievances. ECF No. 48. He also objects to the finding that the alleged First and Fourteenth Amendment violations stated in his third claim were not clearly established. ECF No. 48. The first argument addresses defendants' motion for summary judgment, ECF No. 23. The second addresses defendants' motion to dismiss, ECF No. 24. I address each of Mr. Williams' objections under a de novo standard of review.

### A. Motion for Summary Judgment

As Judge Hegarty stated, the Prison Litigation Reform Act ("PLRA") requires that a claim regarding prison conditions must be administratively exhausted before a prisoner may challenge those conditions by filing suit. *Porter v. Nussle*, 534 U.S. 516, 520 (2002) ("[The PLRA's] exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."). Specifically, the exhaustion provision states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a). "Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). The burden is on defendants to assert any failure to exhaust as a defense, and they do so here pursuant to Fed. R. Civ. P. 56. Thus, if the evidence presented does not create a genuine issue of material fact as to whether Mr. Williams' constitutional claims against

defendants were properly exhausted, the claims must be dismissed without prejudice. *See Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007).

Judge Hegarty noted that defendants concede that Mr. William's exhausted his administrative remedies on his tobacco use and denial of religious ceremonies grievances, which went to his third claim. ECF No. 40 at 2, n. 2. Judge Hegarty then found that Mr. Williams had not raised a genuine dispute of material fact as to whether he had exhausted his remedies for his first and second claims and the other parts of his third claim as required under the PLRA. Mr. Williams first objects to Judge Hegarty's findings that he did not exhaust these grievances. He also argues that his failures to exhaust should be excused. ECF No. 48.

1. Exhaustion of Medical Grievance

Mr. Williams argues that he exhausted two grievances, both of which were resolved in his favor at Step One. ECF No. 48.

Regarding the first grievance, Mr. Williams states that his "medical grievance was resolved in my favor, therefore, there was no further possibility of relief and I exhausted my remedy." *Id.* Mr. Williams filed this Step One grievance after filing two requests for medical attention, neither of which had been granted. ECF No. 23-2 at 1. He received a response that stated "[y]ou were indeed scheduled and then it appears you had to be rescheduled. I apologize for the delay in getting you seen. . . . You will be scheduled to be seen." Id. The disposition of the grievance was "granted in part." *Id.* Though the Step One grievance was "granted in part," Mr. Williams filed a Step Two grievance when he did not receive the medical care he requested. ECF No. 23-2 at 1. At Step Two, his grievance was denied, stating:

> Your kite for trouble sleeping is for Mental Health. The remedy you are
> requesting is not one that is available to you. Please review the AR 850-04. You
> may not request to see a certain provider. You have had some xrays recently and

> you currently do not have any open kites in medical. . . .  Your grievance is denied.

ECF No. 23-2 at 2.  He then filed a Step Three grievance which was procedurally denied, stating that he had "articulated a number of different issues and only one issue is allowed per grievance."  *Id.* at 3.  He therefore "failed to follow the grievance procedure in this matter," and had "<u>not</u> exhausted [his] administrative remedies."  *Id.* (citing AR 850-04 IV. D. 1).

Though the Step One grievance was "granted in part," Mr. Williams clearly did not seem to think the grievance was resolved because he proceeded to appeal it, presumably because he did not receive the requested relief.  At the subsequent stages the grievances were not resolved in his favor.  From these facts, Mr. Williams has not raised a genuine dispute of material fact as to whether he exhausted his administrative remedies for his medical grievance.

Mr. Williams also argues that his "pipe ceremony grievance" was resolved at Step One, and therefore, no further remedy was available.  ECF No. 48 at 2.  If it was resolved, then no further remedy would be necessary.  However, I interpret this argument as referring to Mr. Williams' November 27, 2017 Step One grievance alleging that Captain King cancelled a pipe ceremony on November 18, 2017 and refused Mr. Williams access to the sweat lodge in retaliation for exercising his religious rights.  ECF No. 23-3 at 8.  Mr. Williams received a response to this grievance which stated "[t]here is no retaliation, you will be able to go to your faith group."  *Id.*  Though the grievance was marked "resolved," Mr. Williams filed a Step Two grievance, copying the same information from his Step One grievance.  *Id.* at 9.  He received a response denying his grievance because the officer concluded there was no discrimination, and access had been denied only because a minimum number of inmates had not wanted to participate.  *Id.*  He filed a Step Three grievance, which was procedurally denied because it was not timely filed and noted that he had not exhausted his administrative remedies.  *Id.* at 10.

Again, I cannot conclude that he has raised a genuine dispute that he exhausted his remedies for these grievances as required under the PLRA.

2. Unavailability of Administrative Process

Mr. Williams argues that though some of his grievances may have been procedurally defective, his failure to exhaust should be excused for several reasons. He claims the CDOC grievance procedures are susceptible to multiple valid interpretations, that one grievance was only late because his case manager did not deliver the requested grievance form on time, and that the defendants misled or manipulated the procedure, effectively denying him access to it. ECF No. 48.

Judge Hegarty concluded none of these arguments could excuse Mr. Williams' failure to exhaust. ECF No. 40 at 15. "The PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). From this Judge Hegarty concluded that nothing, even CDOC's failure to follow its own procedure, could excuse Mr. Williams' failure to exhaust. ECF No. 40 at 12–22.

Though *Ross v. Blake* essentially mandates exhaustion, it also articulates several limited exceptions to exhaustion. The Court outlined three situations in which failure to exhaust is excusable because an administrative remedy was not in actuality available to the inmate as required under the PLRA. *Id*. at 1858–61. First, an administrative remedy is unavailable "when (despite what regulation or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859. Second, a remedy is unavailable when the administrative scheme is "so opaque that it

becomes practically speaking, incapable of use," such as "when rules are so confusing . . . no reasonable prisoner can use them." *Id.*  Finally, "the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*  As these are the only exceptions to the exhaustion requirement, Mr. Williams' allegations must fit within one of these scenarios.

a. <u>Susceptible to Multiple Interpretations</u>

Mr. Williams argues that "the admin[istrative] process is susceptible to multiple reasonable interpretations."  Specifically, he points to CDOC regulation AR 850-04-IV-(d)(6) which states "each grievance will address only one problem or complaint and include a description of the relief requested.  Problems that arise from the same incident or set of facts will be grieved in one grievance, even though it may involve multiple DOC employees, contract workers, or volunteers."  AR 850-04-IV-(d)(6).  Several of Mr. Williams' grievances were denied based on this rule because he "articulated a number of different issues and only one issue is allowed per grievance."  ECF No. 23-2 at 4.  For example, one grievance was denied because it articulated "two separate medical issues in one grievance (i.e. foot/back pain & trouble sleeping.)." *Id.*  Mr. Williams argues that the rule could be interpreted as allowing multiple issues to be pled in the same grievance when they arose "from the same incident or set of facts."

The *Ross* court ruled out multiple interpretations as an excuse for failure to exhaust: "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Ross*, 136 S. Ct. at 1859. To fit within one of the *Ross* exceptions, Mr. Williams would have had to show that the procedures are "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Id.*

I cannot find that these procedures are "essentially unknowable." Though the CDOC rule does seem to suggest that there are some instances in which a grievance can contain more than one issue— i.e., when it arises "from the same incident or set of facts," Mr. Williams was more than once clearly alerted that his grievances contained too many complaints. *See, e.g.*, ECF No. 23-2 at 4, ECF No. 23-3 at 4.

　　　b. Frustrated by Case Manager's Delay

Mr. Williams alleges that one of his Step Three grievances, which was denied due to lateness, "was late because of [his] case manager's delay," and his failure to exhaust should therefore be excused. ECF No. 48. Inmates have five days to appeal a grievance. AR 850-04. According to his response to defendants' motion, Mr. Williams received the response to his Step Two grievance on December 29, 2017, meaning he needed to file his Step Three grievance on January 3, 2018. ECF No. 31 at 7. On December 29, Mr. Williams submitted a kite to a case manager requesting a Step Three grievance form. *Id.* According to his response, he received the requested form the night of January 3 and wrote the grievance and placed it in the case manager box the morning of January 4. *Id.*

Judge Hegarty rejected the allegations for two reasons. First, he noted that the "date answered" on Mr. Williams' request for the Step Three grievance form was January 2, 2018, the day before the deadline to submit the Step Three form. ECF No. 40 at 22. Second, he noted that Mr. William's allegations regarding his case manager's delay was not signed under penalty of perjury, and therefore could not raise a genuine dispute of material fact. *Id.* at 21–22. Under 28 U.S.C. § 1746 and Fed. R. Civ. P. 56(e), an unsworn declaration or affidavit that is signed under penalty of perjury may be used to raise factual issues precluding summary judgment. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 n.1 (10th Cir. 1994). I agree with Judge Hegarty that

Mr. Williams' declaration did not comply with the letter of § 1746 because it did not state "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." *See* ECF No. 31. Unsworn declarations or affidavits that do not comply with § 1746 do not raise factual issues precluding summary judgment. *Hayes v. Marriott*, 70 F.3d 1144, 1148 (10th Cir. 1995). In *Hayes v. Marriot* the Tenth Circuit refused to consider unsworn affidavits of defendant prison officials. *Id.*

Here, however, Mr. Williams proceeds pro se. The Tenth Circuit has long held that

> [t]he rights of pro se litigants require careful protection where highly technical requirements are involved, especially when enforcing those requirements might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits. District courts must take care to insure [sic] that pro se litigants are provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings.

*Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir. 1985) (quoting *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir. 1984)) (internal quotations omitted). In *Jaxon v. Circle K Corp.*, the Tenth Circuit found that the district court abused its discretion by failing to allow a pro se plaintiff to remedy obvious defects in his summary judgment materials. *Id.* Like in *Jaxon*, here Mr. Williams has "presented evidence that would preclude summary judgment, but some of the evidence was not in the proper form." *Muller v. Perdue*, 744 F. App'x 555, 559 (10th Cir. 2018) (unpublished) (distinguishing *Jaxon* on factual grounds). Pro se litigants "must follow the same rules of procedure that govern other litigants." *Calbart v. Sauer*, 504 F. App'x 778, 781 (10th Cir. 2012) (unpublished). However, the Tenth Circuit has repeatedly affirmed the rule in *Jaxon* as applicable to situations where the pro se plaintiff "was tripped up by a highly technical requirement for the presentation of admissible evidence," in which the court may allow the pro se party to remedy the obvious defects. *Id.*

Despite this, I must grant summary judgment for defendants because Mr. Williams has failed to request time to remedy the defects in his materials. The Tenth Circuit has also ruled that for the *Jaxon* rule to apply, a pro se litigant must request to remedy the defects. *Howell v. New Mexico Dep't of Aging & Long Term Servs.*, 398 F. App'x 355, 359 n.3 (10th Cir. 2010) (unpublished) (citing *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009)) ("While a district court may abuse its discretion by refusing a pro se litigant's request to remedy defects in her summary judgment materials, *Jaxon*, 773 F.2d at 1140, [plaintiff] made no such request. Consequently, she was bound to follow the same rules of procedure that govern other litigants." (internal quotations omitted)). Mr. Williams does not make such a request in his objections, and therefore I must grant summary judgment on this issue.

c. Misleading/Manipulative Process

Mr. Williams also argues that defendants misled him about how to follow the proper procedures in multiple ways, and that this rendered the grievance process unavailable. ECF No. 48. Under the third *Ross* scenario, exhaustion is not required when "officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures. . . . [S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Ross*, 136 S. Ct. at 1860.

Mr. Williams first alleges that this exception applies because defendants did not comply with their own procedural rules governing the grievance process, instead manipulating the process and misleading him so to render a remedy unavailable. ECF No. 40 at 14. Specifically, he alleges defendants violated its grievance procedure AR 850-04-IVC(2), which states: "If a grievance is procedurally deficient the offender will be asked to cure any deficiencies and resubmit for processing." AR 850-04-IVC(2). Mr. Williams correctly concluded that CDOC

staff should alert him of procedural deficiencies and ask him to refile.  Though he acknowledges

some of his grievances contained procedural deficiencies that ultimately led to rejection at Step

Three, he alleges that he was never informed of nor asked to cure deficiencies prior to the Step

Three procedural denials.  Mr. Williams alleges this failure amounts to defendants misleading

him so as to prevent his use of the grievance procedures.

The Tenth Circuit has established a two prong test for determining whether the grievance

process was unavailable under the third *Ross* scenario: "the nonmoving party . . . must produce

specific facts that show . . . . (1) the threat[, machination,] or intimidation actually did deter

[him] from lodging a grievance and (2) the threat[, machination,] or intimidation would deter a

reasonable inmate of ordinary firmness and fortitude from lodging a grievance."  *May v. Segovia*,

929 F.3d 1223, 1235 (10th Cir. 2019) (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1251 (10th Cir.

2011)) (internal quotations omitted) (alterations in original).  Mr. Williams has not argued that he

can meet this heightened burden.  Nor do the facts show that he was actually deterred from

lodging a grievance, as he continued to do so after the alleged improper responses.  In support of

his position, Mr. Williams cites only pre-*Ross* out-of-circuit cases that, though  correctly cited,

do not alter the application of the more recent and binding Tenth Circuit rule.  ECF No. 31.

Because the Tenth Circuit has established a high bar to show unavailability, I cannot find Mr.

Williams should be excused from exhaustion on this ground.

For the same reason, I must reject Mr. Williams' next argument that the Step Three

responses are internally contradictory, misleading him and preventing him from ever

successfully taking advantage of the grievance process.  He argues that the responses

contradictorily state both that he has and has not exhausted his administrative remedies.

Responses to Step Three grievance are written by grievance officers.  *See* ECF No. 23-3 at 6, 11.

All of the responses to Mr. Williams' Step Three grievances state something like "[t]his is the last administrative action in this matter," or "this is the final administrative response in this matter." *Id*. The Step Three responses currently at issue precedes that sentence with a statement like "you have <u>not</u> exhausted your administrative remedies." *Id*. CDOC's procedure, specifically AR 850-04-IV-(E)(3)(c)(4), states "the decision of the grievance officer is the final agency action."

Mr. Williams argues that the statement that "this is the last administrative action in this matter," written by a grievance officer, amounts to CDOC "ending any further remedy." AR 850-04-IV-(E)(3)(c)(4) reinforces this belief. From his perspective, after such a statement by the grievance officer, "no further 'step' is available, the process is over. If another remedy is available CDOC gives no avenue on how to pursue it." ECF No. 48.

Taking his allegations as true, including the grievance officer's statements and the CDOC's procedures, Mr. Williams has plausibly alleged that he was deterred from lodging further grievances after his medical grievance, his uniform grievance, and his pipe ceremony grievances were procedurally denied at Step Three. Due to the defendants' statements Mr. Williams reasonably believed no further remedy was available, and therefore did not attempt to further exhaust this grievance. He has met the first prong of the Tenth Circuit test.

Mr. Williams must also show that a reasonable inmate would be similarly deterred from filing a grievance. *May*, 929 F.3d at 1234. Mr. Williams has not, however, made any allegations suggesting other inmates would reasonably be (or have been) deterred. I cannot act as the plaintiff's advocate and argue for him that a reasonable inmate would be deterred. *Hall*, 935 F.2d at 1110. I therefore cannot conclude that Mr. Williams met the Tenth Circuit test. His failure to exhaust cannot be excused, and I must grant summary judgment on this claim.

Because Mr. Williams has not been able to raise a genuine dispute of material fact on whether he exhausted his administrative remedies, or whether his failure to exhaust was excusable, I agree with Judge Hegarty that I must grant summary judgment with regard to Mr. Williams' first and second claims. I must also grant summary judgment on his third claim insofar as he challenges exhaustion of the pipe ceremony grievance and the uniform grievance.

**B.  <u>Motion to Dismiss</u>**

Mr. Williams also objects to Judge Hegarty's finding that defendants were entitled to qualified immunity on the remainder of his third claim, concerning suspension of religious ceremonies and tobacco use. ECF No. 48. When a defendant asserts qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). To overcome a defendant's qualified immunity, "[t]he plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236.

"In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Farrell v. Montoya*, 878 F.3d 933, 936–37 (10th Cir. 2017) (quoting *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016)).

1. Free Exercise

Judge Hegarty concluded that Mr. Williams had successfully alleged that defendants had substantially burdened his free exercise by suspending use of tobacco in Native American religious ceremonies for thirty days and the ceremonies themselves for over seven days. ECF No. 40 at 37. However, he then found that the violation was not clearly established. *Id*.

In determining that the law was not clearly established Judge Hegarty first noted that Mr. Williams had not pointed to any precedent that supported his position. ECF No. 40 at 37–38. He then examined the case law himself and concluded that a brief suspension of access to religious ceremonies was not a clearly established violation of free exercise rights. *Id*. at 38–40.

Examining *McKinley v. Maddox*, 493 F. App'x 928, 933 (10th Cir. 2012) (unpublished), Judge Hegarty noted that the Tenth Circuit found that a plaintiff had successfully alleged "more than an isolated or de minimus burden on free exercise," when he claimed he was denied church services for a month. ECF No. 40 at 39. Despite this, Judge Hegarty concluded that *McKinley* did not clearly establish such denial as a free exercise violation, because the Tenth Circuit remanded to the district court for further proceedings. ECF No. 40 at 39–40.

I find that *McKinley* does establish that denial of services for a significant period violates free exercise. Though the Tenth Circuit did remand, it instructed the district court to consider "whether McKinley can meet the other requirements for a claim for relief, including allegations of facts showing each defendant's personal participation in the constitutional violation." *McKinley*, 493 F. App'x at 933. The court did not ask the district court to consider "whether the delay in church access had actually violated plaintiff's First Amendment rights," as Judge Hegarty suggests, but rather which defendants were responsible for that violation. *Id*. at 40.

*McKinley* established that denial of access to services, even temporarily, was a First Amendment violation. Because I find that temporary denial of services was a violation of clearly established law, defendants are not entitled to qualified immunity on this claim.

2. Retaliation

Judge Hegarty concluded that Mr. Williams failed to allege facts sufficient to maintain that the tobacco suspension was retaliatory, therefore failing on the first prong of qualified immunity. ECF No. 40 at 42. In order to state a First Amendment retaliation claim, a plaintiff must allege:

> that (1) he was engaged in constitutionally protected activity; (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the government's actions were substantially motivated as a response to his exercise of constitutionally protected conduct.

*Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic*, 582 F.3d 1155, 1165 (10th Cir. 2009). "Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010).

Mr. Williams alleges that defendants' suspension of the Native American group's tobacco use was retaliatory, but he also states that defendants made the decision to suspend tobacco after finding tobacco in the cell of a non-Native American offender. ECF No. 9.

Judge Hegarty correctly concluded that Mr. Williams did not successfully allege that defendants were motivated by his exercise of constitutional rights. Rather the facts he alleges indicate that the suspension was motivated by the discovery of the Native American tobacco in a non-Native American offender's cell. Because Mr. Williams has provided only conclusory

statements in support of his allegations of retaliatory motive, he has not alleged a constitutional violation and defendants are entitled to qualified immunity for this claim.

3. <u>Religious Discrimination</u>

Finally, Judge Hegarty concluded that Mr. Williams failed to allege that he experienced religious discrimination, failing on the first prong of the qualified immunity analysis. ECF No. 40 at 43. As Judge Hegarty states, to state a valid claim for violation the Equal Protection Clause, taking all well-pleaded allegations as true, Plaintiff must allege that his treatment differs from that of similarly situated inmates. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Plaintiff must also present specific facts which demonstrate discriminatory intent or purpose. *See SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012). "'Discriminatory purpose' [] implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (citing *United Jewish Organizations v. Carey*, 430 U.S. 144, 179 (1977) (concurring opinion)) (internal quotations omitted).

I agree with Judge Hegarty that Mr. Williams has not shown that the suspension of Native American services was motivated by a discriminatory purpose. Mr. Williams has alleged different treatment of similarly situated individuals, namely Christian and Muslim inmates who continued to have access to services during lockdown. ECF No. 9. However, Mr. Williams himself points out the defendants' proffered explanation that during lockdown and other "modified operations all non-supervised faith observances were suspended." ECF No. 9. He also admits that Native American ceremonies do not have volunteers to supervise the activities.

*Id.*  This strongly suggests that the decision was an application of neutral CDOC policy rather than because of defendants' discriminatory purpose.  Further, he provides nothing other than conclusory statements alleging the decision was made "because of" and not "in spite of" its effects on Native American inmates.  *Feeney*, 442 U.S. at 279.  Because he has failed to state a claim for religious discrimination, I conclude defendants are entitled to qualified immunity for this claim.

## CONCLUSION

Defendants are entitled to summary judgment on Mr. William's first and second claims in their entirety.  They are also entitled to summary judgment on Mr. William's third claim as it pertains to the pipe ceremony and uniform grievances.

Turning to the motion to dismiss, as Judge Hegarty noted, defendants' motion requested only "that all claims in Plaintiff's Amended Prisoner Complaint except for the First and Fourteenth official capacity claims seeking solely prospective injunctive relief be dismissed." ECF No. 40 at 31–32.  On the issue of prospective injunctive relief, defendants' argument states only that Mr. Williams "is not seeking prospective, injunctive relief."  ECF No. 24 at 2, n. 1. Judge Hegarty concluded that this was incorrect, as Mr. Williams explicitly requests "for the Court to rule that . . . present[] and future retaliation will not continue," and that Defendants be required to allow Plaintiff to purchase, at his own expense, a video game console."  ECF No. 40 at 32. Judge Hegarty correctly noted that "there are apparent issues with the relief requested and its causal connection" to the constitutional violations.  *Id.*  However, he concluded that defendants had not briefed such an argument and would have to raise any concerns with Mr. William's recovery theory in an appropriate motion.  *Id.*  Therefore, to the extent that the remainder of Mr. William's third claim seeks prospective relief against Defendants King,

Hansen, Lisac, and Volz in their official capacities for their alleged violation of his free exercise rights under the First Amendment, plaintiff's claim should proceed.  ECF No. 40 at 31–32.

As discussed above, Mr. Williams's third claim regarding denial of religious ceremonies and tobacco use alleges a clearly established free exercise violation.  Therefore, defendants are not entitled to qualified immunity on this claim against them in their individual capacities.  Therefore, all that remains in this case are Mr. Williams' third claim for denial of religious ceremonies and tobacco use seeking prospective relief against defendants in their official capacities, and retrospective relief against defendants in their individual capacities.

**ORDER**

1. Magistrate Judge Hegarty's recommendation, ECF No. 40, is ADOPTED in part.

2. Defendants' motion for summary judgement, ECF No. 23, is GRANTED in part and DENIED in part.  Plaintiff's first and second claims are dismissed WITHOUT PREJUDICE.

3. Defendants' partial motion to dismiss, ECF No. 24, is GRANTED in part and DENIED in part.  The Court dismisses plaintiff's first and second claims, as well as plaintiff's third claim except as it pertains to denial of religious ceremonies and tobacco use.

DATED this 30th day of March, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge